IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LISA ALCAZAR,
    Plaintiff,

v.                                                                  Civil No. 3:24cv307 (DJN)

VIRGINIA DEPARTMENT
OF CORRECTIONS,
    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the Partial Motion to Dismiss Plaintiff Lisa

Alcazar's ("Plaintiff" or "Alcazar") Complaint filed by Defendant the Commonwealth of

Virginia Department of Corrections ("Defendant" or "VDOC"). (ECF No. 11 ("Motion").)

Defendant moves the Court to dismiss Counts I and II of the Complaint. For the reasons stated

herein, the Court will GRANT IN PART and DENY IN PART Defendant's Motion (ECF No.

11). Specifically, the Court will GRANT Defendant's request to dismiss Plaintiff's plea for

punitive damages but will otherwise DENY Defendant's Motion.

### I.    BACKGROUND

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e *et seq.*, alleging that Defendant created a hostile work environment, that

Plaintiff suffered a discriminatory discharge and that VDOC officials retaliated against Plaintiff

for engaging in protected activity by terminating her employment.

### A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Complaint (ECF No. 1). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant motion.

Plaintiff, a female, began her employment with VDOC at its State Farm Correctional Center ("State Farm") in or around January 2021 as a Program Support Technician in the Records Department, reporting to a VDOC employee named Betty Boatwright ("Boatwright"). (ECF No. 1 ("Compl.") ¶¶ 9, 95.)  Boatwright, "[o]n or around March 1, 2021," initiated "a pattern of harassment and discriminatory behavior" toward Plaintiff, including asking her "unprofessional questions" about her "sex life." (*Id.* ¶¶ 10–12.)  The Complaint includes a litany of allegations concerning Boatwright's pattern of harassing conduct.

On multiple occasions, Boatwright tugged on the back of Plaintiff's clothing and touched her lower back — once on or around April 1, 2021, and two more times on unspecified occasions between April and November 2021. (*Id.* ¶¶ 13–14.)  On one such instance, Boatwright told Plaintiff to cover up "all that," even though Plaintiff was wearing a knee-length cardigan at the time. (*Id.* ¶ 13.)  Between April and November 2021, Boatwright "used [Alcazar's] designated phone," "breathe[d] on [Alcazar's] neck," and "joke[d] about [Alcazar's] attempts to keep [Boatwright] away." (*Id.* ¶¶ 15–16.)  Similarly, on or around May 3, 2021, and on other occasions throughout Alcazar's time in her role at State Farm, Boatwright "repeatedly stared at [Alcazar] and made inappropriate comments about [Alcazar's] body." (*Id.* ¶ 22.)

On or around April 16, 2021, in the presence of Plaintiff and another employee named Janet Hovermale ("Hovermale"), Boatwright "use[d] vulgar, discriminatory, harassing, and disturbing language" while looking at pictures of transgender inmates, including remarking that

"they were the next best thing to pussy." (*Id.* ¶ 17–18.)  Indeed, Boatwright "frequently made these derogatory comments and used lewd sexual language about individuals' appearances," doing so in the presence of Plaintiff. (*Id.* ¶ 19.)  In one instance, on or around May 17, 2021, Boatwright told "explicit sexual stories" about counselors and used vulgar terms when referring to female counselors and other women at State Farm. (*Id.* ¶ 20.)  During a May 2021 meeting, Boatwright began staring at Plaintiff's body and stated that she could not trade chairs with Plaintiff, because her rear end "was too large" and would "hang over the sides of the chair." (*Id.* ¶ 24.)  On another occasion, at an unspecified date between March 2021 and November 2021, Boatwright told Plaintiff that she has "'enough cushion back there' to break her fall" after Plaintiff almost tripped in the office. (*Id.* ¶ 26.)

In May 2021, in reference to Plaintiff's colleague, Lt. Sabrina Logan ("Logan"), Hovermale stated that Logan "drools over" Plaintiff, prompting Boatwright to remark to Plaintiff that "[s]he's dripping for you." (*Id.* ¶ 27.)  After a weekend in May 2021, Boatwright told Plaintiff that she "almost called [her] cell phone over the weekend" to see if she would join Boatwright at a slot machine, prompting Plaintiff to respond "that she would not have met her and that she was glad Ms. Boatwright did not call her." (*Id.* ¶ 29.)  On or around August 3, 2021, Boatwright "referred to a former Records employee as the 'little gay black boy.'" (*Id.* ¶ 40.) And on October 1, 2021, Boatwright, while talking to another VDOC employee named Geoffery Jackson, stated that "some people must 'grease themselves up in order to get their pants on,'" while making facial expressions toward Plaintiff. (*Id.* ¶ 52.)

Throughout this period of harassment, Plaintiff repeatedly told Boatwright to stop or otherwise opposed Boatwright's conduct, including asking her to stop touching her hair each time this occurred, setting up an alternate desk space so that Boatwright would not continue to

invade her personal space, continually asking Boatwright to refrain from her multiple profane comments regarding transgender individuals, and informing Boatwright "how difficult it was to work around her due to her inappropriate and unpleasant sex-based comments, language[] and conduct." (*Id.* ¶¶ 14, 16, 21, 28–29, 36.)

In early June 2021, Alcazar told other employees, including Officer Darlene Dowler ("Dowler") and Program Support Technician Donnetta Payne ("Payne"), about Boatwright's conduct. (*Id.* ¶ 30.) On or about June 11, 2021, in the Records Department office, Boatwright verbally accosted Plaintiff and Hovermale, stating that she knew one of them was "the snitch" and that she has gotten many other employees terminated in the past. (*Id.* ¶ 32.)

On June 23, 2021, Boatwright issued Plaintiff formal written counseling about an unspecified issue. (*Id.* ¶ 34.) On or about August 10, 2021, Boatwright threatened to terminate Plaintiff, adding that doing so would be an "easy task"— a comment that Plaintiff states stemmed from Boatwright's fear that Plaintiff would report Boatwright's conduct. (*Id.* ¶ 41.) On August 18, 2021, Plaintiff emailed Boatwright and Assistant Warden Frank Roach ("Roach") on behalf of herself and Hovermale, requesting third-party mediation to address Boatwright's management of her and Hovermale. (*Id.* ¶ 42.) However, Boatwright refused to engage in mediation, and "Roach and [VDOC] did nothing in response" to Plaintiff's request. (*Id.* ¶ 43.) After Boatwright's formal written counseling, Plaintiff reminded Boatwright that she had continuously asked her to stop her harassing conduct, prompting Boatwright to state "that she would continue to make any comments that she desired" and to share "a story about a former female employee that she fired for trying to report her for making comments about how she looked in pajamas." (*Id.* ¶¶ 36–37.)

On October 1, 2021, Boatwright issued Plaintiff a "Written Counseling Notice." (*Id.* ¶ 45.) On October 4, 2021, Plaintiff informed Major Gutierrez and Roach that "she was making a formal complaint about a hostile work environment" against Boatwright for "sexual harassment and other discriminatory conduct." (*Id.* ¶ 53.) On October 6, 2021, Boatwright provided Plaintiff with her annual performance evaluation, rating Plaintiff overall as a "'Contributor' – meaning that [Alcazar] was meeting [VDOC's] expectations." (*Id.* ¶ 55.) Plaintiff received a "Below Contributor" rating in two out of the 13 categories on the evaluation and alleges that Boatwright gave her these ratings as retaliation for Plaintiff complaints regarding Boatwright's behavior. (*Id.* ¶¶ 56, 60–61.)

On October 22, 2021, Plaintiff submitted a "Complaint Affidavit" to VDOC's human resources department. (*Id.* ¶ 65.) In a November 5, 2021 meeting with VDOC officials Warden Thomas Meyer ("Meyer"), Roach and Human Resources Officer Michelle Bonnett, Meyer indicated that VDOC was terminating Plaintiff's employment due to "the release of an inmate who should not have been released because a court order to maintain the inmate's custody had been issued." (*Id.* ¶ 68.) At Roach's urging, Plaintiff sent an email in which she admitted to making a mistake by releasing the inmate. (*Id.* ¶ 70.) The Complaint alleges that Plaintiff "was not responsible for the release of the inmate," because "numerous departments and individuals [including Hovermale] authorized the inmate's release," and that Plaintiff "had received authorization to release the inmate." (*Id.* ¶ 75.) In Plaintiff's telling, "Boatwright had expressly put Ms. Hovermale in charge of intake and release of inmates," and Hovermale authorized the inmate's release without discovering the paper copy of the court order to maintain custody over the inmate. (*Id.*) VDOC did not terminate Hovermale. (*Id.* ¶ 76.)

**B.    Procedural History**

Before filing an action in this Court, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") "[o]n or about March 4, 2022." (*Id.* ¶ 4.)  On February 2, 2024, Plaintiff received her Notice of Right to Sue from the United States Department of Justice, allowing her ninety (90) days to file a lawsuit related to her Charge of Discrimination.  (*Id.* ¶ 5.)

On April 26, 2024, Plaintiff filed her Complaint with this Court, asserting three claims. Count I constitutes a hostile work environment claim, alleging that VDOC, through Boatwright's comments and behavior intentionally discriminated against Plaintiff on the basis of sex, thereby creating a hostile work environment that was imbued with severe and pervasive sexual harassment.  (*Id.* ¶¶ 96, 98.)  While acknowledging that "certain . . . actions may have occurred more than 180 or 300 days before Ms. Alcazar's filing of her Charge of Discrimination with the EEOC," the Complaint alleges that VDOC "engaged in such a consistent and continuous harassing manner that Ms. Alcazar's claims are subject to the continuing violation theory or are otherwise timely under the law."  (*Id.* ¶ 97.)  In Plaintiff's telling, VDOC "did not adequately monitor the workplace, demonstrating its negligence and establishing that any anti-harassment policy was either adopted or administered in bad faith or otherwise defective or dysfunctional." (*Id.* ¶ 102.)

Count II, a discriminatory discharge claim, alleges that VDOC lacked a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and that any such proffered reason stands as a pretext for retaliation and/or discrimination.  (*Id.* ¶ 116.)  Count III brings a retaliation claim, alleging that VDOC terminated Plaintiff for engaging in Title VII-protected activity by complaining about Boatwright's conduct.  (*Id.* ¶ 122.)

6

On June 5, 2024, Defendant filed the instant Partial Motion to Dismiss, seeking the dismissal with prejudice of Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.)  On June 20, 2024, Plaintiff responded in opposition to the Motion.  (ECF No. 14.)  On June 26, 2024, Defendant replied, rendering the Motion ripe for review.  (ECF No. 15.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint; it does not serve as the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion to dismiss, the Court accepts the well-pleaded allegations in the complaint as true and views the facts in the light most favorable to the plaintiff.  *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Federal Rule of Civil Procedure 8(a), a complaint must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  As the Supreme Court opined in *Twombly*, a complaint must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations."  *Id.* (citations omitted).  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable."  *Id.* at 555, 570.  Thus, a complaint must assert facts that are more than "merely consistent with" the other party's liability.  *Id.* at

557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

### III.    ANALYSIS

#### A.    Documents Submitted with the Motion to Dismiss

As an initial matter, Plaintiff argues that the Court should disregard the documents that Defendant attached to the pending Motion to Dismiss: (1) the EEOC charge that Plaintiff filed in this matter ("EEOC Charge") (ECF No. 12-1) and (2) the email that the Complaint referenced in ¶ 70, which Plaintiff allegedly wrote in response to Roach's urging ("Alcazar Email") (ECF No. 12-2). For the reasons stated below, the Court rejects Plaintiff's argument.

In reviewing a motion to dismiss, district courts may consider documents that are "expressly incorporated" into a complaint and "documents sufficiently referred to in the complaint or central to the plaintiff's claim when the authenticity is not disputed." *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021). However, "[m]ere quotation or reference to documents is not enough to incorporate those documents into the complaint." *Id.* For a document to qualify for consideration along with a motion to dismiss, "the plaintiff's claims must turn on, or otherwise be based on, the contents of the document. . . . Short of that, a document is not integral to the complaint and should not be considered." *Id.*

The Court finds that the EEOC charge and Alcazar Email stand integral to the Complaint and thus can be considered here. First, Plaintiff does not dispute either document's authenticity. Second, the EEOC Charge qualifies as central to Plaintiff's claim, because before bringing the instant suit, Plaintiff had to exhaust her administrative remedies, including by filing an EEOC Charge. 42 U.S.C. § 2000e-5(e)(1). The EEOC Charge thus stands relevant as a threshold document (and one which Plaintiff expressly referred to in the Complaint). (Compl. ¶ 4.) Third,

Plaintiff's retaliation claim turns in part on the Alcazar Email, because this document "gives rise to the legal rights asserted" in the Complaint; Plaintiff's allegation that the Alcazar Email served as a pretext for her termination by VDOC constitutes the entire premise of Plaintiff's retaliation claim. *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007).  Indeed, the Complaint itself relies on this email.  (Compl. ¶ 70.)  The Court thus considers both documents at this stage.

### B.      Count I

To establish a hostile work environment claim, Plaintiff must allege that (1) she experienced unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there exists some basis for imposing liability on the employer.  *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022).  As Defendant does not contest that Boatwright's conduct qualified as unwelcome, the Court proceeds by examining whether the Complaint plausibly meets the second, third and fourth prong of a hostile work environment claim.

#### 1.      Harassment Based on Sex

Defendant argues that because Plaintiff grounds her hostile work environment allegations on same-sex harassment, i.e., based on the conduct of another female (Boatwright), she faces a particularly high hurdle at the pleading stage.  (Mem. in Supp. of Partial Mot. to Dismiss ("Def.'s Mem.") (ECF No. 12) at 7–8.)  In Defendant's view, the Complaint fails to plausibly allege that Boatwright's unwelcome conduct was based on Plaintiff's sex.  (*Id.* at 8.)  The Court disagrees and finds that Plaintiff plausibly establishes the second element.

As Defendant notes, the Supreme Court has made clear that comments with sexual content, standing alone, does not suffice to establish workplace harassment.  *See Oncale v.*

*Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  In *Oncale*, the Supreme Court

observed that:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is
> directed only at "discrimination . . . because of . . . sex."  We have never held that
> workplace harassment . . . is automatically discrimination because of sex merely
> because the words used have sexual content or connotations.

*Id.*  There, the Supreme Court "identified three evidentiary routes by which a plaintiff could

prove that [s]he was the victim of same-sex harassment based on" her sex.  *Roberts v. Glenn*

*Indus. Grp., Inc.*, 998 F.3d 111, 118 (4th Cir. 2021).  These routes include (1) when a complaint

presents "credible evidence that the harasser [is] homosexual" and the relevant conduct involves

"explicit or implicit proposals of sexual activity"; (2) when the "sex-specific and derogatory

terms" of the harassment indicate "general hostility to the presence of [the victim's sex] in the

workplace"; and (3) when the complaint offers comparisons indicating that the harasser treated

members of one sex worse than those of another in a "mixed-sex workplace."  *Oncale*, 523 U.S.

at 80.  According to Defendant, Plaintiff fails to plausibly allege any of these evidentiary routes,

fatally undermining Count I.  (Def.'s Mem. at 9.)

But as Defendant acknowledges, the *Oncale* options do not qualify as collectively

exhaustive.  (*Id.* at 9 n.4.)  Indeed, "[n]othing in *Oncale* indicates [that] the Supreme Court

intended the three examples it cited to be the only ways to prove that same-sex sexual

harassment is sex-based discrimination."  *Roberts*, 998 F.3d at 119.  "Actionable discrimination

includes conduct 'because of' the victim's gender, which is broader than conduct of a 'sexual

nature.'"  *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 n.16 (4th Cir. 2000).

Accordingly, conduct that does not feature an "overtly sexual" nature can still support a claim of

a hostile environment based on sex if such conduct constitutes "part of a pattern of objectionable,

sex-based discriminatory behavior."  *Roberts*, 998 F.3d at 121; *see also Webster v. Chesterfield*

*Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022) (plaintiff may demonstrate that offending conduct "was based on sex" by "establishing that such conduct would not have occurred *but for* her sex").

After rightly noting the impact of *Roberts*, however, Plaintiff curiously offers nothing to support her "on the basis of sex" allegations beyond the evidentiary routes that *Oncale* articulated, other than a passing reference to the Supreme Court's holding in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), that "a plaintiff may establish a sexual harassment claim with evidence of sex-stereotyping." (Pl.'s Opp. to Mot. to Dismiss (ECF No. 14) ("Pl.'s Opp.") at 9.) Yet, the Complaint stands devoid of well-pleaded factual allegations that Boatwright subjected Plaintiff to harassing conduct due to a stereotype about Plaintiff's sex. Accordingly, the Court assesses whether the Complaint plausibly meets one of the *Oncale* evidentiary routes.

The Court begins with the second and third *Oncale* routes before circling back to the first, which entails a more thorough analysis. When the "sex-specific and derogatory terms" of the harassment indicate "general hostility to the presence of [the victim's sex] in the workplace," such conduct satisfies the "on the basis of sex" prong. *Oncale*, 523 U.S. at 80. Here, Plaintiff highlights that the Complaint alleges that Boatwright also harassed other female employees, including Hovermale, and made vulgar comments regarding transgender individuals. (Pl.'s Opp. at 13–14.) But as Defendant notes, Boatwright's vulgar comments about transgender individuals did not demonstrate a general hostility to *women* in the VDOC workplace, instead illustrating hostility toward LGBTQ individuals. (Def.'s Reply Br. (ECF No. 15) ("Def.'s Reply") at 7.) And as Plaintiff admits, Boatwright's harassment of Hovermale evidently stemmed from her disabling conditions. (Pl.'s Opp. at 13.) The second *Oncale* evidentiary route thus stands unavailable to Plaintiff.

11

As to the third *Oncale* route — when the complaint offers comparisons indicating that the harasser treated members of one sex worse than those of another in a "mixed-sex workplace" — Plaintiff offers no male comparator set. *Oncale*, 523 U.S. at 80.  In fact, the Complaint features only two brief indications that Boatwright interacted with male employees at VDOC:  a conversation in which Boatwright told a counselor, Frank Carillo, to "be careful" around Plaintiff since she "documents everything," (Compl. ¶ 38), and a reference that Boatwright made to a "little gay black boy" who formerly work in the Records Office, (*id.* ¶ 40).  The latter comment reinforces a generalized vulgar attitude in the workplace on the part of Boatwright, rather than particularly vulgar treatment of women.  Plaintiff argues that "the lack of allegations surrounding harassment toward men . . . reveal[s] the truth: Ms. Boatwright did not show hostility toward men because there are no such allegations that support such facts." (Pl.'s Opp. at 15.)  But the entire premise of the third *Oncale* evidentiary route entails a "mixed-place workplace." *Oncale*, 523 U.S. at 80.  In the absence of factual allegations that Boatwright treated female employees differently than male employees, Plaintiff fails to plausibly establish harassment based on her sex under the third *Oncale* evidentiary route.

However, the first *Oncale* evidentiary route — when a complaint presents "credible evidence that the harasser [is] homosexual" and the relevant conduct involves "explicit or implicit proposals of sexual activity" — presents a closer call. *Oncale*, 523 U.S. at 80.  Plaintiff argues that the Complaint presents credible evidence that Boatwright was sexually attracted to women, including Plaintiff.  The Complaint alleges that Boatwright:  (i) in Plaintiff's presence, remarked that transgender inmates were the "next best thing to pussy"; (ii) invaded her personal space and "joke[d] about [Alcazar's] attempts to keep [Boatwright] away" from her desk; (iii) stared at Plaintiff's body and repeatedly made lewd comments regarding her rear end;

12

(iv) repeatedly touched Plaintiff without consent to pull on her clothes and touch her back, telling

her to cover "all that"; (v) told Plaintiff that she had enough "cushion back there"; (vi) stated that

"some people must 'grease themselves up in order to get their pants on,'" while making facial

expressions toward Plaintiff; (vii) claimed that another female employee was "dripping" for

Plaintiff; (viii) told Plaintiff that she "almost called [her] cell phone over the weekend" to see if

she would join Boatwright at a slot machine; and (ix) told Plaintiff "about a former female

employee that she fired for trying to report her for making comments about how she looked in

pajamas." (Compl. ¶¶ 13, 15–16, 18, 22–27, 29, 37, 52.)

      Defendant contends that these allegations "fail to plead that Boatwright made an earnest

sexual solicitation," pointing to a series of cases that purportedly foreclose relief on this set of

facts. (Def.'s Mem. at 10–11 (citing *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255 (4th Cir.

2001); *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 840 (E.D. Va. 2002); *Price v.

City of Alexandria*, 2021 WL 1439677 (E.D. Va. Feb. 9, 2021); and *Atkins v. Comput. Scis.

Corp.*, 264 F. Supp. 2d 404 (E.D. Va. 2003)).) However, these cases stand inapposite. For

instance, in *Lack*, the Fourth Circuit concluded that the plaintiff failed to establish as a matter of

law that he was harassed on the basis of his sex, because the offending individual's behavior

could not "reasonably be construed as an 'earnest sexual solicitation.'" *Lack*, 240 F.3d at 261.

Indeed, the offending individual in *Lack* "did not limit his jokes, lewd behavior, or sexual

attention to him individually, or to men more generally." *Id.* In contrast, here, although both

Boatwright and the offender in *Lack* made inappropriate comments that went beyond a single

individual, (*See* Compl. ¶¶ 17–18 (making lewd comments about transgender individuals); *id.*

¶ 40 (referring to a former VDOC employee as a "little gay black boy")), the Complaint includes

no evidence that Boatwright inappropriately touched anyone other than females.  In other words, the Complaint plausibly establishes that Boatwright targeted her sexual attention to women.

"In determining whether offensive conduct can be attributed to discrimination against the employee's [sex], courts must view the behavior in light of the social context surrounding the actions." *Strothers v. City of Laurel*, 895 F.3d 317, 329 (4th Cir. 2018).  Here, the Complaint stands replete with factual allegations of Boatwright's sustained sexual interest in Plaintiff, with her repeated instances of touching, her comments and questions about Plaintiff's sexual activities and rear end, her remark that she considered contacting Plaintiff outside of work hours, and her statement (in explicit language) that another female colleague sexually desired Plaintiff, among others.  Rather than constituting "a boor who frequently annoyed and touched [her] co-workers," *English*, 190 F. Supp. 2d at 845–46, Boatwright appears to have taken a particular interest in touching (and making sexualized comments about) Plaintiff.  At the same time, the Complaint does not allege that Boatwright made an explicit proposal of sexual activity, so only if the Complaint plausibly alleges an *implicit* proposal could the first *Oncale* evidentiary route remain available for meeting the "on the basis of sex" prong.  *See Roberts*, 998 F.3d at 118 (describing the first *Oncale* route as "when there is 'credible evidence that the harasser [is] homosexual' *and* the harassing conduct involves 'explicit or implicit proposals of sexual activity'" (emphasis added)).

Boatwright's alleged conduct here falls somewhere between comments merely featuring sexual content and comments that courts within this District have found to clearly constitute proposals of sexual activity.  *See, e.g.*, *Kerns v. RCS Trucking & Freight, Inc.*, 2023 WL 4868555, at *1, *3 (E.D. Va. July 31, 2023) (holding that offending individual's questions to plaintiff about whether she had "considered having a sexual encounter with him" and that he had

14

"considered going to her hotel room at night" on a work trip during the prior year, among other conduct, rose to the level of "explicit or implicit proposals of sexual activity"). Faced with this gray area at the pleading stage, the Court emphasizes that Plaintiff may demonstrate that the relevant offending conduct "was based on sex" by "establishing that such conduct would not have occurred *but for* her sex." *Webster*, 38 F.4th at 410. Because the Complaint presents numerous allegations indicating Boatwright's sexual interest in women, including her attempts to touch Plaintiff, comment about contacting Plaintiff on a weekend, explicit references to Plaintiff's body and her sexual desirability to another female VDOC employee, the Court declines to foreclose the reasonable possibility that Boatwright's actions amounted to an implicit proposal of sexual activity.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged that Boatwright, a female, held a sexual attraction to Plaintiff and harassed her on the basis of her sex. The Court therefore proceeds to the "severe and pervasive" prong of a hostile work environment claim.

### 2.    Severe or Pervasive Harassment

In the Fourth Circuit, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Discriminatory conduct must be "aimed to humiliate, ridicule or intimidate" the victim to be actionable. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). In some circumstances, even a single instance of misconduct can create a hostile work environment. For example, using a racially charged epithet or sexually assaulting a co-worker suffice to give rise to a hostile work environment claim, even if such misconduct occurs only once. *Boyer-Liberto*

*v. Fountainebleau Corp.*, 786 F.3d 264, 264 (4th Cir. 2015) (racial epithet); *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (sexual assault).

Ultimately, whether conduct qualifies as "sufficiently severe or pervasive" involves "both a subjective and objective component, i.e., the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment." *Strothers*, 895 F.3d at 331. This finding entails a totality-of-the-circumstances analysis, which includes assessing "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* And in terms of sex-based discrimination, "even a series of sexually charged incidents may not give rise to a hostile work environment claim" in certain circumstances. *Patterson v. Va. Dep't of Corr.*, 2024 WL 1704669, at *14 (E.D. Va. Apr. 19, 2024) (citing *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753–54 (4th Cir. 1996) (holding that a few discriminatory incidents occurring "intermittently over a seven-year period, with gaps between incidents as great as a year . . . suggests the absence of a condition sufficiently pervasive to establish Title VII liability")).

Here, as Defendant concedes, Boatwright harassed Plaintiff on at least six separate incidents over the course of two months, including Boatwright asking "harassing and unprofessional questions" on March 1, 2021, (Compl. ¶ 11); Boatwright touching Plaintiff's back on April 1, 2021 and telling her to cover "all that", (*id.* ¶ 13); Boatwright "telling explicit sexual stories" to Plaintiff on or around May 17, 2021, (*id.* ¶ 20); Boatwright "staring at" Plaintiff and making comments about her "butt" on or around May 3, 2021, (*id.* ¶¶ 23–24); Boatwright telling Plaintiff that Logan is "dripping for you" on or around May 21, 2021), (*id.* ¶ 27); and Boatwright commenting that "some people must 'grease themselves up in order to get their pants on'" while

"making a facial expression with raised eyebrows towards" Plaintiff, (*id.* ¶ 52). (Def.'s Mem. at 15.) In addition to these instances that Defendant notes, Boatwright repeatedly invaded Plaintiff's personal space and "joke[d] about [Alcazar's] attempts to keep [Boatwright] away" from her desk, (Compl. ¶¶ 15–16); Boatwright told Plaintiff that she had enough "cushion back there," (*id.* ¶ 26); and Boatwright told Plaintiff that she "almost called [her] cell phone over the weekend" to see if she would join Boatwright at a slot machine, (*id.* ¶ 29). She also allegedly responded to Plaintiff's complaints against her behavior in June 2021 by telling Plaintiff "a story about a former female employee that she fired for trying to report her for making comments about how she looked in pajamas." (*Id.* ¶¶ 36–37.)

Taken together, these instances indicate a sustained pattern over a condensed period of time, with Plaintiff mostly offering specific dates for the individual instances of harassment. Attempting to rebut this conclusion, Defendant points to a Fourth Circuit case that featured over ten occasions of complained-of conduct within a similar timespan. (Def.'s Mem. at 16 (citing *Sowash v. Marshalls of MA, Inc.*, 2022 WL 2256312, at *4 (4th Cir. June 23, 2022)).) But *Sowash* involved an individual who "hugged [plaintiff] and touched her arm, *without any sexual commentary or innuendo*, on more than ten occasions over the course of several months." 2022 WL 2256312, at *4 (emphasis added). Here, the Complaint stands rife with sexual commentary and innuendo, ranging from Plaintiff's remark that a female colleague was "dripping" for her to her questions about Plaintiff's sex life and her commentary on Plaintiff's rear end, among other factual allegations. *Sowash* thus proves inapposite.

As to the conduct's severity, Defendant rightly observes the Supreme Court's caution that Title VII "does not set forth 'a general civility code for the American workplace.'" (Def.'s Mem. at 16 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).) To

Defendant, "Boatwright fostered a relatively informal workplace embedded with provocative sexual jokes and antics," thereby falling short of triggering liability under Title VII. (Def.'s Mem. at 16.) But Boatwright's conduct goes beyond "rude treatment by [coworkers]," "callous behavior by [one's] superiors[]" or "a routine difference of opinion and personality conflict with [one's] supervisor," which fail to incur Title VII liability. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008). Indeed, many of Boatwright's comments here, including her comments about Plaintiff's rear end hanging off a chair, that a female colleague was "dripping" for Plaintiff and that "some people" (while looking at Plaintiff) must "grease themselves up" to fit their pants on, strike the Court as humiliating. *Cf. Schubin v. Axseum, Inc.*, 2023 WL 5277975, at *6 (E.D. Va. Aug. 16, 2023) (finding that where a single inappropriate comment qualified as "neither humiliating nor threatening," the remark failed to "create an objectively hostile work environment").

To be sure, Boatwright's conduct could have been worse. *Compare Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (finding that a reasonable jury could conclude that persistent references to females as "bitches," "prostitutes" and other explicit remarks qualified as sufficiently severe), *and Parker v. Reema Consulting Servs.*, 915 F.3d 297, 304–05 (4th Cir. 2019) (finding severe abuse where coworkers spread rumors about a female employee sleeping around the office, which caused other coworkers to harass and exclude her), *with Martin v. MCAP Christiansburg, LLC*, 143 F. Supp. 3d 442, 446 (W.D. Va. Oct. 28, 2015) (finding insufficient severity for plaintiff's allegations that defendant gave her flowers and coffee, left her voice messages, and sent her cards but finding sufficient severity where defendant physically contacted her). But VDOC cannot escape Title VII liability simply because Boatwright normalized course rhetoric and sexualized comments. Boatwright's sustained pattern of

18

sexualized commentary qualifies as sufficiently humiliating as to rise to the level of severe or pervasive conduct, particularly when considering that Boatwright served as Plaintiff's supervisor. *See Sunkins v. Hampton Rds. Connector Partners*, 701 F. Supp. 3d 342, 354 (E.D. Va. 2023) ("Courts in the Fourth Circuit regularly place greater weight on misconduct when the perpetrator is the plaintiff's supervisor."); *see also Bland v. Fairfax Cnty.*, 2011 WL 1660630, at *13–15 (E.D. Va. May 3, 2011) (denying motion for summary judgment where supervisor made sexual comments during three in-person meetings and six telephone conversations, despite lack of direct propositions).

And as to the conduct's impact on Plaintiff's work performance, the Complaint alleges that Plaintiff told Boatwright in June 2021 that she found it difficult to work around her, asked for third-party intervention and reported the harassment to multiple VDOC officials. (Compl. ¶¶ 36, 42, 50, 53.) Viewed holistically and in the light most favorable to Plaintiff, these allegations indicate that Boatwright's conduct interfered with Plaintiff's ability to perform her job. Defendant protests that Boatwright provided Plaintiff with an evaluation rating of "Contributor," arguing that Plaintiff therefore "faced no interference with her work capabilities as she could evidently continue to do her job at a satisfactorily level notwithstanding the alleged harassment." (Def.'s Mem. at 19.) But Plaintiff's ability to continue in her duties does not bar a finding of "severe or pervasive" conduct. *See Wain v. Trammell Hotel Invs., LLC*, 2005 WL 2044950, at *3 (W.D. Va. Aug. 24, 2005) (finding that while plaintiff "did not allege that she could not continue with her work because of the offensive conduct, [plaintiff] has alleged that she complained of the conduct to her supervisors, giving rise to the inference that the conduct affected her work performance"). The Court therefore finds that the Complaint satisfies the "severe or pervasive" prong.

### 3.    Imposing Liability on the Employer

Defendant next argues that Plaintiff lacks a basis for imposing liability on Boatwright's employer (i.e., VDOC).  (Def.'s Mem. at 20.)  For this element of a hostile work environment claim, "an employer may be found vicariously liable to an employee when a supervisor 'with immediate (or successively higher) authority' over [her] creates an 'actionable hostile environment.'" *Roberts*, 998 F.3d at 118.  And an employer "may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 335 (4th Cir. 2011).  "Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment." *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003).  After receiving notice, an employer then must deliver remedial action that qualifies as "reasonably calculated to stop the harassment." *Roberts*, 998 F.3d at 118.

Here, Defendant argues that the Complaint fails to allege that Boatwright constituted Plaintiff's "supervisor for purposes of Title VII liability," and asserts that because Boatwright does not appear to have been involved in Plaintiff's hiring or termination, she does not qualify as a supervisor from whom liability can be imputed to VDOC.  (Def.'s Mem. at 20–21.)  But the Complaint does include a straightforward reference to Boatwright as Plaintiff's "manager." (Compl. ¶ 9.)  And as the Fourth Circuit held in *Roberts*, "an employer may be found vicariously liable to an employee when a supervisor 'with immediate (or successively higher) authority' over [her] creates an 'actionable hostile environment.'" *Roberts*, 998 F.3d at 118.  The parties thus dispute whether Boatwright qualifies as Plaintiff's "supervisor."

The Supreme Court has held that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment

actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 450 (2013).  Such actions

include "the power to hire, fire, demote, promote, transfer, or discipline an employee." *Id.* at

426.  Although the Complaint does not explicitly allege that Boatwright had the power to hire or

fire Plaintiff, the Complaint *does* allege that Boatwright (1) told Plaintiff "a story about a former

female employee that she fired for trying to report her for making comments about how she

looked in pajamas," (Compl. ¶ 37), and (2) "bragged about how she has gotten many other

employees fired in the past," (*id.* ¶ 32).  Viewing the factual allegations in the light most

favorable to Plaintiff, the Complaint plausibly alleges that Boatwright held the power to, at the

very least, discipline employees.

And even if the Court were to conclude that the Complaint fails to plausibly establish that

Boatwright qualified as a supervisor for Title VII purposes, Defendant's argument about

vicarious liability still fails.  As *Vance* held, "[i]f the harassing employee is the victim's co-

worker, the employer is liable only if it was negligent in controlling working conditions."

*Vance*, 570 U.S. at 421.  Here, the Complaint alleges that "Boatwright has been the subject of

numerous discrimination and/or harassment complaints during her tenure with [VDOC]."

(Compl. ¶ 89.)  Defendant makes much of the fact that the Complaint does not specify in this

instance whether these past complaints involved sexual discrimination, as opposed to other forms

of discrimination.  (Def.'s Reply at 11.)  But at the pleading stage, the Court concludes that the

Complaint has plausibly pleaded that VDOC "knew or should have known about the harassment

and failed to take effective action to stop it." *Hoyle*, 650 F.3d at 335.

For example, the Complaint alleges that in early June 2021, Plaintiff "discussed Ms.

Boatwright's sexual harassment (including some of the examples described above) with Officer

Darlene Dowler (assigned to SFCC) and Donnetta Payne, a Program Support Technician who

transferred away from Ms. Boatwright due to her abusive conduct." (Compl. ¶ 30.) In addition, although Plaintiff's request for mediation does not explicitly appear to involve sexual discrimination when reviewing the face of the Complaint, the logical implication of Plaintiff's mediation request — when viewed in the context of Plaintiff's complaints to colleagues regarding Boatwright's behavior — suggests that Plaintiff sought mediation for the sexual discrimination that she allegedly suffered. Indeed, the Complaint stands replete with allegations that Plaintiff voiced concerns about Boatwright's conduct. (Compl. ¶¶ 34, 36–37, 41–42, 50, 53, 64.) VDOC thus plausibly had notice of this conduct yet failed to reasonably mitigate Boatwright's behavior. At this stage of the litigation, the Court thus finds that the Complaint has plausibly met the vicarious liability prong for a hostile work environment claim.

### C.   Count II

Defendant contends that the Court should dismiss Count II (discriminatory discharge claim), because the Complaint fails to plausibly allege a cognizable hostile work environment claim based on sexual harassment and thus cannot allege that VDOC terminated Plaintiff for any discriminatory reason. (Def.'s Mem. at 22.) Given that the Court has concluded that Plaintiff has plausibly alleged discriminatory conduct based on sex, and as Defendant offers no additional argument for the dismissal of Count II, the Court declines to dismiss Count II.

### D.   Punitive Damages

Lastly, Defendant requests that the Court dismiss the Complaint insofar as Plaintiff seeks punitive damages. As Defendant right notes, 42 U.S.C. § 1981a(b)(1) specifically prohibits punitive damages against any "government, government agency or political subdivision" in a Title VII action. (Def.'s Mem. at 22–23.) Plaintiff concedes this point. (Pl.'s Opp. at 25.)

Accordingly, the Court will GRANT IN PART Defendant's Motion by dismissing Plaintiff's request for punitive damages from all counts in the Complaint.

## IV.     CONCLUSION

For the reasons set forth above, the Court will GRANT IN PART and DENY IN PART Defendant's Motion, (ECF No. 11).  Specifically, the Court will GRANT Defendant's request to dismiss Plaintiff's plea for punitive damages but will otherwise DENY Defendant's Motion.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date:  August 30, 2024